STATE of Iowa, Appellee,

v.

Mary Ellis CUEVAS, Appellant.

No. 62091.

Supreme Court of Iowa.

July 25, 1979.

Thomas J. Levis of Scalise, Scism, Gentry, Brick & Brick, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Richard L. Cleland, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McCORMICK and LARSON, JJ.

LARSON, Justice.

This defendant appeals from her conviction and sentence for the crime of murder in the first degree under sections 690.1 and 690.2, The Code 1977. She contends that the trial court erred in refusing to direct a verdict in her favor on the grounds that the State had failed to corroborate the testimony of an accomplice and that the State, which had charged her as an aider and abettor in the crime, had failed to prove she had "actively participated" in the events leading to the death of the victim. She also claims it erred in overruling her motion for new trial based upon alleged jury misconduct. We affirm the trial court.

Peter Miover, the accomplice, provided the following account of a series of crime and attempted crime which transpired on New Year's Eve, 1976. He testified that Mary and Phillip Cuevas, defendant's husband, met him in the bar of the Franklin Hotel in Des Moines. They left the bar for

the purpose of breaking into a house and "getting some stuff out of it." Defendant, who was present when the plans were discussed, drove the car. When they arrived at the scene of their first attempt, Phil Cuevas handed Miover a sawed-off shotgun, ski mask and gloves. The three of them approached the house, and Phil Cuevas broke a window in it. When a light went off inside, they assumed it was occupied and retreated. They next attempted to steal some tires from a service station but were confronted by a dog and abandoned the idea.

The "Weeks plan" was then devised. Weeks was a reputed "fence" thought by them to have a lot of money in his bib overalls and a coin collection in his possession. Defendant, still the driver of the car, was present during the discussion of this plan. Miover was to put on a ski mask and "make like a battering ram," knocking down Weeks' door, whereupon he and Phil Cuevas were to "throw down the old man and take his bibbers and coin collection." Defendant stayed in the car while Phil Cuevas, armed with a .380 Llama handgun, and Miover, armed with a sawed-off shotgun, went to execute the plan. However, Miover was not an effective battering ram. He was apparently unable to take proper aim at the door because of his ski mask and struck his head on the doorknob. He fell dazed to the ground; while on the ground he heard a shot and saw Phil Cuevas run for the car. Miover got up and ran after him. Cuevas said, "we had to shoot him," to which defendant replied, "I heard." The defendant drove the car from the murder scene back to the Franklin Hotel where they left Miover.

Miover later returned with other friends "to see if the man was in fact dead." He was, and Miover and his friends proceeded to steal some clothing and a small amount of money.

I. *Corroboration of Accomplice's Testimony.* Our common law has always required corroboration of an accomplice's testimony because he is "a witness but one step less in degradation than the felon himself." *Ray v. State,* 1 Greene (Iowa) 316, 320 (1848). The common-law rule required corroboration "in relation to some material fact about which he has testified, involving the prisoner's guilt." *Id.* at 323. Proof of a *material* fact was required because "[t]o prove that the accomplice had told the truth in relation to irrelevant and immaterial matters which are known to everybody, would have no tendency to confirm his testimony, asserting the guilt of the party on trial." *Id.*

■ Our common-law rule has been codified and was embodied in section 782.5, The Code 1977:

A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof.

The purpose for requiring corroborating evidence is two-fold: It tends to connect the accused with the commission of the crime and it also adds credibility to the accomplice, whose believability is severely eroded by his own involvement in the matter and his obvious self-interest in focusing the blame on the defendant. *See State v. Johnson,* 237 N.W.2d 819, 822 (Iowa 1976).

Some of the principles involved in the application of this rule are set out in *State v. Vesey,* 241 N.W.2d 888, 890 (Iowa 1976):

The existence of corroborative evidence is a question of law for the court, but its sufficiency is ordinarily a question of fact for the jury. It need not be strong. Any corroborative evidence which tends to connect the accused with the commission of the crime and thereby supports the credibility of the accomplice is sufficient. Such evidence may be direct or circumstantial. It must be inculpatory but need not be entirely inconsistent with innocence. Each case must be judged on its own facts. [Case cited.]

Whether evidence is corroborative depends on whether it supports some material part of the accomplice's testimony.

It need not go to the whole of the accomplice's testimony or every material fact. The statutory requirement is met if it can fairly be said the accomplice is corroborated in some material fact tending to connect the defendant with the commission of the crime. [Case cited.]

We also note the principles involved in the consideration of the motion for directed verdict. "[T]he evidence [is viewed] in the light most favorable to the state regardless of whether it is contradicted and every legitimate inference that may be fairly and reasonably deducted therefrom must be carried to the aid of the evidence." *State v. Veverka,* 271 N.W.2d 744, 746–47 (Iowa 1978).

The State alleges that Miover's testimony was corroborated in three particulars. Police Officer Haviland testified that he spent part of New Year's Eve, 1976, in the Franklin Hotel Bar as part of his duties on the vice squad. He testified that he saw the Cuevases enter the bar and join Miover. Sandra See was throwing a party that night. She testified that the Cuevases left the party for about an hour around the time the crime was committed. She added that when they returned they were armed, Phil Cuevas with a sawed-off shotgun and Mary with a "small" gun in a holster on her belt. Several police officers testified to establish that Philip Cuevas had a Llama .380 handgun and a holster in his possession when he was arrested. This gun was later established by ballistics tests to be the murder weapon.

Defendant contends this corroboration is insufficient to support a conviction under our statute. Specifically, she claims Officer Haviland's testimony about seeing them together at the Franklin Hotel, as also testified to by Miover, is deficient for two reasons. The testimony is inherently weak because the event took place several months before he first identified the Cuevases, because his observation of the three on New Year's Eve was very brief, and because he did not know any of them before. She also claims the corroborating evidence does not overcome the inherent suspicion of Peter Miover's testimony and does not explain why he returned to the scene of the crime nor "clear up the question of whether or not Peter Miover, in fact, was the actual gunman who killed George Weeks." She asserts Sandra See's testimony is also insufficient. She claims it is suspect because it is inconsistent with her grand jury testimony and See is "biased" against the defendant. Further, she claims See's testimony about the possession by the Cuevas couple of the sawed-off shotgun and handgun does not implicate Mary Cuevas in the murder of George Weeks, but is "[i]n fact . . . entirely consistent with the theory that Peter Miover killed George Weeks when he returned to the home of George Weeks to rob him." She apparently concedes the .380 Llama was found in her husband's possession and that it was the murder weapon. She argues, however, that this evidence would just as logically support a conclusion that Miover, who admittedly had had possession of the handgun earlier, used it on Weeks and then gave it to Phil Cuevas.

 What this defendant claims, in essence, is that the evidence offered to corroborate Miover's testimony does not single out the other two in the trio but would just as logically support a finding that Miover murdered Weeks when he returned to his home. We disagree with defendant's assessment of the quality of the corroborative evidence. Officer Haviland's and Sandra See's testimony, with the addition of the murder weapon, makes the corroboration sufficient. It is true that the State was not able to positively show that the handgun which Mary Cuevas had when she returned to the party was the murder weapon, but a positive showing is not required. *See State v. Morrison,* 183 N.W.2d 696, 698 (Iowa 1971) (corroboration held sufficient despite witness' inability to identify subject car by either make or color, only that it was "long and low"). However, there was evidence from which the jury could have concluded that the Cuevases were in possession of the murder weapon the entire night.

The issue in determining sufficiency of this corroboration evidence is not, as de-

fendant claims, whether it could also be inculpatory of another person, nor whether it could be consistent with defendant's innocence. This is illustrated by a consideration of *State v. Bizzett,* 212 N.W.2d 466 (Iowa 1973). In that case the accomplice in a robbery testified that the defendant had inflicted the blow which caused the victim's death. Bizzett admitted that he had been with the accomplice, the victim, and another man until shortly before the attack but asserted that he then became separated from them. He said he encountered the accomplice soon thereafter who informed him of the attack and he ran to the aid of the victim. When he saw how severely wounded the victim was, he panicked and ran. We said that, "[d]efendant's [own] testimony furnishes sufficient corroboration for [his accomplice's] story that, not only was he one of those engaged in the fatal beating, but was also its prime mover." *Id.* at 469. That corroboration was certainly inculpatory of other persons and was wholly consistent with Bizzett's innocence, but we held it sufficient.

Defendant also claims that the corroboration only established her opportunity to commit the crime and that this is legally insufficient, citing *Vesey.* As noted above, we believe the corroboration evidence establishes more. We also believe defendant misconstrues the import of the *Vesey* decision. In that case we did say that "[c]orroborative evidence is insufficient if it merely supports *accomplice['s] testimony tending to show a defendant's opportunity to commit a crime."* (Emphasis added). *Vesey,* 241 N.W.2d at 891. However, the shortcoming of the State's case in *Vesey* was not that the corroboration testimony was insufficient to lend credibility to the accomplice's testimony. Rather, it was that the accomplice's testimony was not inculpatory of the defendant. Under those circumstances, "the corroborative evidence could rise no higher than the accomplice['s] testimony it tended to support. Like that testimony it did not rise above the level of suspicion. It cannot fairly be said Webb's testimony was corroborated *[on] a material fact tending to connect the defendant with the commission of the crime."* (Emphasis added.) *Id.*

Defendant argues that the corroboration testimony was weak and suspect under the circumstances. However, we do not purport to assess the credibility of the witnesses; that is for the jury. We conclude under the facts shown the corroboration was sufficient.

■ II. *Sufficiency of the Evidence of Aiding and Abetting.* Defendant contends there was not sufficient evidence from which the jury could find she knowingly participated in the commission of this crime. Our conclusion that the corroboration was sufficient as to Miover's testimony, however, effectively disposes of this issue. Viewing such evidence in the light most favorable to the verdict, there was ample evidence from which the jury could conclude she drove the car with prior knowledge of the burglary plans. This is sufficient for conviction as an aider and abettor. *See Deemy v. District Court,* 215 Iowa 690, 246 N.W. 833 (1933).

■ Defendant claims the participation, if any, was involuntary because she was coerced by her husband. The record of the testimony relied upon to support this position was made during cross-examination of Peter Miover:

Q. The fact is, is it not, that Phil Cuevas makes Mary drive the car? Isn't that correct? . . . A. Yes. Almost every time we ever went anywhere, Mary had to do all the driving.

Q. Is Phil Cuevas the kind of person you say no to? A. I can't really answer for women. I know most guys don't.

Q. How about yourself? A. No, I didn't ever.

Q. Are you afraid of him? A. One on one in a fist fight back in the back room, no.

Q. Well, that doesn't answer my question. A. But other than that yeah. If I hadn't been with him all day and knew what he was carrying, I wouldn't want to meet him in an alley.

Q. The fact is you were afraid of him? A. As far as them circumstances go, yes.

Q. The fact is you are afraid of him?
A. Just like I said.

Q. Yes? A. Yeah.

On the other hand, the record shows that she had opportunities to drive away when the two men were out of the car and other evidence from which the jurors could conclude she was a willing participant. They apparently did so. Under these circumstances we conclude the trial court correctly overruled her motion for directed verdict on this ground.

III. *Alleged Jury Misconduct.* Defendant contends she was denied a fair trial because of alleged jury misconduct. At the hearing on the motion for new trial, a matron testified she saw two jurors nodding and that they both appeared to be sleeping. The parties agreed as to the identity of the jurors in question. One of them testified at the hearing and denied that she was sleeping; the other juror in question was not called by either side. The bailiff testified that he did not observe any of the jurors sleeping. No reference was made to the matter by defendant's counsel during trial. In this case, defendant has failed to establish the alleged misconduct. Even assuming she had, she has failed to show any "reasonable probability" that it resulted in prejudice to her as our cases require. *See State v. Little,* 164 N.W.2d 81, 83 (Iowa 1969).

A trial court has broad discretion in ruling on motions for new trial based upon alleged jury misconduct. *State v. White,* 223 N.W.2d 173, 177 (Iowa 1974). We find no abuse of that discretion here.

We find no reversible error.

AFFIRMED.