STATE of Iowa, Appellee,

v.

Douglas Eugene JONES, Sr., Appellant.

No. 92–297.

Court of Appeals of Iowa.

Oct. 28, 1993.

Artis Reis and Mark C. Smith of Reis and Bowman, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., Thomas H. Miller, Asst. Atty. Gen., and David J. Welu, County Atty., for appellee.

Heard by DONIELSON, P.J., SCHLEGEL, J., and KEEFE, Senior Judge *, but decided by SCHLEGEL, P.J., and HABHAB, J., and KEEFE, Senior Judge.

KEEFE, Senior Judge.

On the morning of Friday, July 12, 1991, neighbors noticed that every light was on in the home occupied by Jeffrey Thomas and Shari Exline. About 6:30 a.m., Bruce Orr went to the home and found the body of Exline lying face down in the living room.

---

\* Senior judge from the 1st judicial district serving on this court by order of the Iowa Supreme Court.

Upon examination he determined she was dead. He proceeded to the Dallas County Sheriff's Office in Adel to notify the authorities. When officers arrived at the Thomas home they observed the lights on. They also observed the naked bodies of Melissa Maharis and Thomas at the bottom of the steps leading to the basement of the home. Exline, Maharis, and Thomas had each been shot in the head by a .25 caliber gun at close range. Maharis was dead. Thomas was badly wounded but alive. Also in the basement, unharmed, was the four-year-old son of Thomas and Exline. He was taken to a foster home.

According to the state medical examiner Exline and Maharis died either late Thursday evening, July 11, 1991, or in the early morning hours of July 12, 1991. Maharis had talked to her husband by telephone about 11:37 p.m. on July 11, 1991. Thomas was taken by helicopter to Iowa Methodist Medical Center in Des Moines. He lived but was unable to speak for some time. All three victims were white.

Exline and Thomas were not married but lived together for some years. Each was a known drug user and dealer in marijuana and methamphetamines. Maharis was a known drug user from Fort Dodge, Iowa.

After the killings the authorities concentrated on David Vestal, Exline's cousin. He had formerly been in the drug business with Exline and Thomas. He had not seen them for some time but did visit the home on July 8, 1991. He told relatives later that he and Thomas had "gotten into it" during the visit. They had disagreed over drugs and money. He had a history of physical violence with relatives. Vestal's girlfriend and Exline were afraid of him.

Allen Thomas, the four-year-old child, identified Vestal as the "man who shot my daddy." He also picked him out of three photo line-ups. On three other photo line-ups, when Vestal's picture was not present, Allen asked, "Where was the picture of the bad man?" However, on two other occasions

Allen appeared not to recognize Vestal. Allen also said the bad man had white skin. While Thomas was in a semiconscious state in the hospital he supposedly squeezed the hand of a law enforcement officer when asked if Vestal shot him. This was a method of identification developed by the officers. Vestal was never arrested in connection with these crimes. He provided an alibi supported by his girlfriend, Roberta Wilson. Both testified at the trial.

Four black males, Troy Mure, Harris Evans, Joey Wheels, and the defendant, Douglas Jones, were arrested and charged with two counts of first-degree murder and one count of attempted murder. It was charged that Evans was the one who shot the victims in the head, execution-style, with a .25 semiautomatic pistol. Wheels fled to Omaha on July 12, 1991, and stayed about a week. He then returned to Des Moines for a short time before he left for California. While back in Des Moines he met with Mure and telephoned Evans. He did not contact defendant. Wheels was arrested in California for the murders in Adel. He later entered into an agreement to plead to reduced charges, two counts of second-degree murder and one charge of attempted murder, with an agreement he would only serve seven years.

Trial of the defendant commenced on January 6, 1992, and was completed January 16, 1992, with a jury verdict finding defendant guilty of two counts of first-degree murder and one count of attempted murder. Following a denial of posttrial motions, defendant was sentenced as provided by law. An appeal was filed.

Defendant asked the court to consider error alleged in his trial as follows: (1) failure to direct verdicts of acquittal because the testimony of the accomplice, Joey Wheels, was not properly corroborated; (2) admission of highly prejudicial evidence which lacked probative value; (3) refusal to allow impeachment of two key State witnesses; (4) failure of the jury to constitute a fair cross-section of the community, violating defendant's right to a fair trial; (5) allowing the testimony of Jeffrey Thomas over defendant's objection; (6) failure to adequately assure the jury fully understood defendant's request to remain silent and their obligation to make no inference from his failure to testify; (7) failure to grant defendant's request for an evidentiary hearing on allegations of juror misconduct or grant a new trial based on juror misconduct; and (8) failure to grant defendant's motion for new trial based on newly-discovered evidence.

■ I. Defendant's first contention is that accomplice Wheels's testimony was not sufficiently corroborated and that directed verdicts of acquittal should have been entered on all counts. The standard of review on this contention is on errors of law. Iowa R.App.P. 4; *State v. Allen,* 348 N.W.2d 243, 247 (Iowa 1984). It is not disputed that Wheels was an accomplice.

■ The requirement of corroboration is designed to eliminate the suspicion aroused by an accomplice's testimony. Note, *Immunity Given to the Accomplice Witness,* 21 Drake L.Rev. 331, 333 (1972). Corroboration need not be strong. *State v. Vesey,* 241 N.W.2d 888, 890 (Iowa 1976). Any evidence tending to connect the defendant with the commission of a crime supports the credibility of accomplice testimony and is sufficient. *Id.* It, further, need not confirm every material fact testified to by the accomplice. *State v. Aldape,* 307 N.W.2d 32, 41 (Iowa 1981). Nor need it confirm all the elements of the crimes charged. *State v. Cuevas,* 281 N.W.2d 627, 630 (Iowa 1979). It must only be supported in some material fact tending to connect the defendant to the crime charged. *Id.* The existence of corroborative evidence is a question of law for the court, but its sufficiency is a question of fact for the jury. *State v. Doss,* 355 N.W.2d 874, 880 (Iowa 1984).

■ We also note the principles involved in considering directed verdicts of acquittal. The evidence is viewed in the light most favorable to the State regardless of whether it is contradicted and every legitimate inference that may be fairly and reasonably deducted therefrom must be carried to the aid of the evidence. *Cuevas,* 281 N.W.2d at 630; *State v. Veverka,* 271 N.W.2d 744, 746–747 (Iowa 1978).

■ Wheels testified to the events and the evidence in question. He stated that on July 11, 1991, he met Evans and defendant in Harris's car and Harris was driving. They persuaded Wheels to join them in a plan to steal cocaine from a Dallas County farmhouse. They knew a man, woman, and child lived there. Supposedly cocaine was being kept there. They decided they needed a fourth person to assist them. They asked Ronny Walker, but he declined. Then they went in search of Troy Mure's brother. He wasn't available, and ultimately Troy agreed to help them.

They then proceeded to the farmhouse. Three of them had face masks. On the way defendant produced loaded handguns from under the front passenger seat. Mure had a .45 caliber semi-automatic, defendant had a .38 revolver, and Wheels had a .25 caliber pistol. Later in the farmhouse, Wheels gave the .25 caliber pistol to Evans. Jones indicated he believed the cocaine was in the refrigerator.

Upon arriving at the house they restrained the three adults and searched the house for drugs. No cocaine was found. They did steal some money and marijuana. At some point Evans shot Exline on the first floor and took Thomas and Maharis to the basement where he forced them to disrobe and shot them. There is a dispute whether he forced Maharis to commit oral sex on Thomas. There was no physical evidence found during the autopsy. See, however, Iowa Code section 702.17 (1991) which defines a "sex act." It only requires "contact," not a completion of the act. After the event the men fled to Des Moines and disposed of the murder weapon.

■ To corroborate Wheels's testimony, the State produced Walker, who testified to his contact with the men. He identified photos of Harris's car used that evening. He could not recall the exact date, but said it was before he heard of the deaths in Dallas County. Mure's mother, his wife, and his uncle were present at Mure's home when defendant and the others came looking for Mure. They all identified defendant as being one of the men. Two identified a photo of Harris's car. All agreed it was during the late evening hours of July 11, 1991. Mure's wife stated Mure left with the men about 10:30 p.m. and returned home several hours later. Evidence defendant was seen in the company of perpetrators of a crime shortly before the event may be used to corroborate testimony. *State v. Hollins,* 397 N.W.2d 701, 704 (Iowa 1987).

■ A further State's witness, Monty Thomas, testified that after he heard about the killing in Dallas County defendant told him he, Harris, Mure, and Wheels were involved in the drug theft and the killings. A defendant's admissions may be considered corroboration. *State v. Williams,* 207 N.W.2d 98, 107 (Iowa 1973).

■ Jeffrey Thomas testified at the trial that he could not remember the details of the attack because of his serious injuries. However, he did remember he was attacked by a black male. He could not identify the defendant. Corroborative evidence may be direct or circumstantial. *State v. Willman,* 244 N.W.2d 314, 315 (Iowa 1976). Thomas's testimony was attacked because of his prior identification of Vestal in the hospital handholding incident. One officer testified to the incident, and one officer testified he did not believe Thomas understood the procedure at all. Allen Thomas, the four-year-old, did not testify at the trial. There was no physical evidence tying the defendant to the crime scene.

The total evidence presented against defendant was not overwhelming but was unquestionably sufficient to support a guilty verdict. Evidence corroborating Wheels's testimony is not without contradiction, but it does exist. Whether it was sufficient was for the jury to decide. We find defendant's claims of insufficient evidence and lack of corroboration are without merit.

II. Defendant's next contention is the trial court erred by admitting photographs and slides of victims, a videotape of the crime scene, and a letter from one of the victims to her husband.

■ The standard of review is for abuse of discretion. *See State v. Gordon,* 354 N.W.2d 783, 784 (Iowa 1984). In order to

show an abuse of discretion, one generally must show that the court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *State v. Blackwell,* 238 N.W.2d 131, 138 (Iowa 1976). It is for the trial court to determine whether exhibits are relevant and whether their relevance outweighs the potential for prejudice. The fact that photos of a gruesome or grizzly nature are offered does not mean they should be excluded for that reason alone, "for murder is by nature gruesome business." *State v. Hickman,* 337 N.W.2d 512, 515–516 (Iowa 1983).

Defendant's attempt to stipulate to certain factual matters does not prevent the State from offering exhibits to support those facts, so long as the exhibits are relevant and outweigh any prejudice. *State v. Moore,* 276 N.W.2d 437, 441 (Iowa 1979). A careful examination of the photos of the victims at the scene, the hospital, and during autopsy discloses that all are relevant. The jury is entitled to see as much as possible what occurred, how the killing took place, and support for the expert testimony. Pictures of the victim while alive and a letter from Maharis to her husband might not have been of great probative value. But it was not an abuse of the trial court's discretion to allow their admission. No prejudice is shown.

It is true there was some duplication in the photos of the farm and the videotape, but no prejudice is shown to the defendant's case as a result.

We conclude that the trial court did not abuse its discretion in admitting the exhibits in question.

**III.** Defendant's next contention is that the trial court erred in not allowing the defendant to examine Wheels about a theft charge that was dismissed and not allowing a videotape of a witness, Carolyn McCullen, into evidence. Our standard of review is abuse of discretion. *Gordon,* 354 N.W.2d at 784.

The Polk County Attorney testified that he dismissed a felony-theft charge against Wheels shortly before trial because Wheels had pled guilty to two murder charges and one attempted murder in Dallas County. Wheels's defense attorney testified to the same state of facts. Both stated it had nothing to do with Wheels's plea agreement and willingness to testify in Dallas County. It is clear a dismissal is not a conviction under Iowa Rule of Evidence 609, and no law is cited to this court to support such a contention. Defendant's attorney was allowed to examine Wheels about his plea, his agreement to testify, and the penal ramifications of his plea. This gave the jury sufficient facts to determine if Wheels's testimony was credible in light of the plea agreement and promise for his testimony.

The videotape of Carolyn McCullen, Troy Mure's mother, was offered to impeach her testimony for the State. She had appeared at a public hearing in October 1991 before the Equality in the Courts task force. She made statements about her status as a single parent; her son, Troy's, involvement with crime; and her personal degree of trust and faith in the criminal justice system. None of these matters were relevant to defendant's trial. Impeachment testimony that only goes to a collateral issue is inadmissible. *State v. Roth,* 403 N.W.2d 762, 767 (Iowa 1987).

We conclude the trial court did not abuse its discretion in not allowing this testimony.

**IV.** This crime occurred in Dallas County, Iowa. Upon motion for change of venue, the case was transferred to Marion County for trial. Defendant's next contention is the jury failed to constitute a fair cross-section of the community in violation of his right, guaranteed by the Sixth and Fourteenth Amendments, to a fair and impartial jury. When constitutional rights are at issue, our standard of review is de novo. *State v. Bumpus,* 459 N.W.2d 619, 622 (Iowa 1990).

Defendant challenges the jury panel as not being representative of the population of Marion County. He claims that the age groups of those between eighteen to twenty-four and those over sixty-five make up "distinctive" groups in the community and were not represented properly on this panel. The eighteen-to-twenty-four group should be

15.3% of the total population in the county, and the actual jury panel had fewer than one-seventh of the expected number (2%). The over-sixty-five group should have been 21.7%, and the panel contained fewer than one-fourteenth of the expected number (1.5%).

In *State v. Watkins,* the Iowa Supreme Court stated that the Sixth Amendment entitles a litigant to a jury panel designed to represent a fair cross-section of the community. 463 N.W.2d 411, 414 (Iowa 1990) (citing *Holland v. Illinois,* 493 U.S. 474, 480, 110 S.Ct. 803, 805–806, 107 L.Ed.2d 905, 916 (1990)). However, a defendant challenging the composition of the jury panel must first establish a prima facie violation of the Sixth Amendment's cross-section requirement. *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 586–587 (1979). If that step is accomplished, then the State has the burden of justifying the infringement by showing that the attainment of a fair cross-section would be incompatible with a significant State interest. *Watkins,* 463 N.W.2d at 414.

In *Watkins,* the Iowa court stated that to establish a prima facie violation the defendant must show:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* (citing *Duren,* 439 U.S. at 364, 99 S.Ct. at 668, 58 L.Ed.2d at 586–87).

The first requirement is to show that age groups are a "distinctive" group in the community for purposes of a cross-section analysis. *Id.* In federal cases where young age has been asserted as a constitutional ground, the uniform holdings have been against such a holding. *United States v. Lynch,* 792 F.2d 269, 271 (1st Cir.1986); *Barber v. Ponte,* 772 F.2d 982, 1000 (1st Cir.1985); *Davis v. Greer,* 675 F.2d 141, 146 (7th Cir.1982); *United States v. Kirk,* 534 F.2d 1262, 1278 (8th Cir.1976); *United States v. Diggs,* 522 F.2d 1310, 1316–1317 (D.C.Cir.1975); *United States v. Blair,* 493 F.Supp. 398, 406 (D.Md. 1980).

One Iowa case, *State v. Brewer,* 247 N.W.2d 205 (Iowa 1976), has touched on this issue. The court said "The mere fact that there might be fewer young persons on the jury, and fewer of the oldest, than the exact proportion of such persons existing in the community does not of itself make a jury unrepresentative." *Id.* at 210 (citing *King v. United States,* 346 F.2d 123, 124 (1st Cir. 1965)).

The Fourteenth Amendment to the United States Constitution entitles a criminal defendant to equal protection of the law. This principle is applied under the Sixth Amendment's requirement of a fair cross-section in the community. *State v. Jones,* 490 N.W.2d 787, 792 (Iowa 1992). Here the defendant has failed to show that age alone is a "distinctive" group in the community.

Under our de novo review of the record we find the defendant has failed to establish a prima facie case of a constitutional violation under either the Sixth or Fourteenth Amendments.

**V.** The next contention of the defendant is the trial court erred in allowing the testimony of Jeffrey Thomas over proper objection. The standard of review is abuse of discretion. *Gordon,* 354 N.W.2d at 784.

Jeffrey Thomas was one of the victims of this unfortunate event. He was shot during its progress. As a result of his head wound he did not have total recall of the events on the night in question. Defendant states that Thomas's testimony is not relevant. Iowa Rule of Evidence 401 states that "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Thomas testified that four black men came to his home that night. He further testified that he and Exline were drug users and sellers. This evidence, if believed by the jury, would tend to corroborate the testimony of Joey Wheels, the accomplice.

The defendant also contends, if the evidence is relevant, its probative value is substantially outweighed by the danger of unfair prejudice. *See* Iowa R.Evid. 403.

The trial judge had the opportunity to hear and evaluate the testimony of the victim before it was presented to the jury. The court found the witness was competent to testify. The jury was entitled to hear the limited testimony of this victim. He testified to actual evidence of the evening in question. The trial court did not abuse its discretion in allowing the testimony.

**VI.** Defendant's next contention is the trial court failed to adequately assure that the jury fully understood his right to remain silent and their obligation to make no inference from his failure to testify.

Defendant claims the trial court should have polled the jury during the trial as to certain television coverage of the trial. The defendant states that family members during the trial saw some local television coverage on the second day of trial which they "interpreted" to mean that the defendant had a burden to come forth with evidence to explain the various aspects of the allegations against him. The defendant's attorney did not see the television presentation and no copy of it was furnished to the trial court. The defendant requested the court to poll the jury as to this event. The State objected.

The standard of review on this portion of the issue is abuse of discretion. *State v. Bishop*, 387 N.W.2d 554, 561 (Iowa 1986).

The trial judge pointed out that he had from the beginning of the trial admonished the jury against listening to, viewing, or reading any media coverage of the trial and would continue to do so for the balance of the trial. There was no evidence the jury had violated that admonition. He further felt that polling would unduly call attention to the television report.

In *State v. Bigley*, 202 N.W.2d 56, 58 (Iowa 1972), and in *State v. Burt*, 249 N.W.2d 651, 654 (Iowa 1977), the Iowa supreme court adopted American Bar Association Standard Relating to Free Trial and Free Press 3.5(f).

Under this standard, if material disseminated during the trial goes beyond the record and *raises serious questions of possible prejudice,* the trial court may on its own motion, or shall on the motion of either party, question each juror as to the event. *Burt,* 249 N.W.2d at 654. (Emphasis supplied.) It thus devolves onto the defendant to demonstrate evidence of jury prejudice. *State v. Frank,* 298 N.W.2d 324, 327 (Iowa 1980).

The second objection is that the prosecutor, in final argument, drew an adverse inference from the fact that defendant did not take the stand. Defendant's motion for a mistrial was denied. Comments which draw inferences of guilt from a defendant's failure to testify violate the self-incrimination clause of the Fifth Amendment and constitute reversible error. *Van Hoff v. State,* 447 N.W.2d 665, 675 (Iowa App.1989). Because this part of the issue involves constitutional rights, our review is de novo. *Bumpus,* 459 N.W.2d at 622.

The county attorney stated that Wheels "told the truth, he got up and took the oath and subjected himself to all questions." Later he said Vestal testified under oath and presented an alibi for himself and that of his girlfriend.

Defendant clearly had no obligation to testify or present an alibi defense. The jury may not draw adverse inferences from defendant's silence. *State v. Morrison,* 368 N.W.2d 173, 175 (Iowa 1985). It is equally true that the trial court has broad discretion in ruling on a motion for mistrial and is in the best position to decide whether prejudice could only be avoided by granting a new trial. *State v. Brown,* 397 N.W.2d 689, 699 (Iowa 1986); *State v. Bishop,* 387 N.W.2d 554, 556 (Iowa 1986).

Here the trial court stated that it did not interpret the county attorney's remarks as defense counsel did. The trial court found the remarks were not improper. Further, the court had admonished the jury that counsel's remarks were not evidence and could not be considered so. The instructions contained the standard instruction that a defendant never has the burden of proof or the duty to call witnesses or produce evidence.

In this case the defense vigorously attacked Wheels's and Vestal's testimony and attempted to show that Vestal was a member of the group that shot Thomas.

We cannot find that the county attorney intended to comment on defendant's right to remain silent when an equally plausible explanation exists for his statements. *See United States v. Griggs*, 735 F.2d 1318, 1322 (11th Cir.1984). The statement could have been better phrased, but it does not demonstrate an intention to comment on defendant's failure to testify.

The trial court did not abuse its discretion on either of these objections.

■ **VII.** Defendant's next contention is the trial court erred by refusing to grant defendant's request to set an evidence hearing on allegations of juror misconduct or to grant a new trial based thereon. The standard of review is abuse of discretion. *State v. Johnson*, 445 N.W.2d 337, 342 (Iowa 1989).

■ Defendant's attorney stated that he contacted the jury after the verdict and was told that one juror felt threatened by another to return a guilty verdict. (She said she would be slapped if she voted for defendant's innocence.) Another said that the jury considered defendant's not testifying even though they were not supposed to, and finally one juror said they discussed the fact that the defendant had a right to appeal so their verdict did not matter. No juror affidavits were filed by defendant's attorney.

■ Hearsay statements given by defense counsel do not suffice to support a claim of juror misconduct. *State v. Feddersen*, 230 N.W.2d 510, 513–514 (Iowa 1975). A trial court has broad discretion in determining whether claimed misconduct on the part of a juror justifies a new trial. *Id.* at 514.

■ In addition, a distinction must be drawn between inquiries into the internal workings of the jury and external pressures brought to bear on the decision-making process. *State v. Rouse*, 290 N.W.2d 911, 916 (Iowa 1980). The internal workings include what parts of the record were or were not considered, the jurors' discussions, their motivation, mental or emotional reactions, their votes, or other evidence which seeks to show that the decision was, or should have been, something other than what the verdict indicates. *Id.* Such matters "inhere" in the jury verdict. *State v. Folck*, 325 N.W.2d 368, 372 (Iowa 1982). A jury cannot impeach their own verdict. *Id.* The trial court did not abuse its discretion in refusing to set an evidentiary hearing or to grant a new trial based on juror misconduct.

■ **VIII.** Defendant's final contention is the trial court erred in denying his motion for new trial based on newly-discovered evidence. The trial court has wide discretion in ruling upon such a motion. *State v. More*, 382 N.W.2d 718, 723 (Iowa App.1985). We will uphold the trial court's ruling if not clearly erroneous. *Id.*

■ Ronny Walker testified for the State. He appeared in court with a large bandage on his neck. He informed the jury that he had been assaulted in a bar the night before his testimony. He testified to seeing Evans, Wheels, and defendant together in Harris's car sometime before the event happened. After the trial John Dock filed an affidavit to the effect that defendant's half brother was shot and the assailant said, "This is for Ronny Walker." This incident occurred on the same night the verdicts were returned. Defendant's theory is that if Walker believed his assailant was one of the defendants or a relative, this would influence his testimony.

Iowa Rule of Criminal Procedure 23(2)(b)(8) provides a new trial shall be granted if defendant discovers important and material evidence in his or her favor since the verdict, which defendant could not with reasonable diligence have discovered and produced at the trial. *See also* I.C. § 822.-2(4).

■ To prevail defendant must show that: (1) the evidence was discovered after the verdict; (2) it could not have been discovered earlier in the exercise of due care; (3) the evidence is material to issues of the case, and not merely cumulative or impeaching; and (4) that the evidence probably would change the result of the trial. *Jones v. State*,

479 N.W.2d 265, 274 (Iowa 1991); *State v. Allen,* 348 N.W.2d 243, 246 (Iowa 1984).

Defendant had clearly not shown grounds three and four. Walker's testimony was cumulative of other witnesses who saw defendant with the others prior to the trial. If Dock's testimony was added to Walker's it would at most be an attempt to impeach Walker. Finally, defendant has not shown the possible impeachment of Walker's testimony by Dock in a new trial would have any effect on the jury verdict.

We have considered all the issues presented by the defendant and find no basis for a reversal of defendant's conviction or sentence. The judgment of the trial court is affirmed.

**AFFIRMED.**

DONIELSON, J., takes no part.