# IN THE COURT OF APPEALS OF IOWA

No. 16-0560
Filed June 21, 2017

**BRITNEY TIBODEAU,**
      Plaintiff-Appellee,

**vs.**

**CDI, LLC,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Hancock County, Rustin T. Davenport, Judge.

Defendant appeals from judgment in a claim arising under the Iowa Civil Rights Act, Iowa Code chapter 216 (2013). **AFFIRMED AND REMANDED.**

David H. Luginbill and Lindsay A. Vaught of Ahlers & Cooney, P.C., Des Moines, for appellant.

Sarah A. Reindl, of Reindl Law Firm, Mason City, for appellee.

Heard by Doyle, P.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

Plaintiff Brittney Tibodeau sued her former employer, CDI, LLC (hereinafter "CDI"), and her former supervisor at CDI, David Monoit, for sex discrimination, sexual harassment, and retaliation in violation of the Iowa Civil Rights Act, Iowa Code chapter 216 (2013). The jury found Tibodeau proved her claims against CDI but did not prove her claims against Monoit. The jury awarded Tibodeau back pay and past and future emotional distress damages. The district court awarded Tibodeau front pay and attorney's fees. CDI timely filed this appeal, raising several claims of error.

I.

The jury could have found the following. Tibodeau worked at CDI in Forest City in 2013. During the summer of that year, Tibodeau took leave for a medical issue. While on leave, Tibodeau attempted suicide. She was treated for depression and anxiety and returned to work.

The workplace was hostile. Tibodeau's coworkers discussed her body in offensive terms, called her derogatory names, started a rumor she was having an affair with another employee, looked at a nude photo of her, displayed provocative photos of women throughout the work area, made phallic shapes out of tape, made humping motions behind her when she bent over, discussed the intimate hygiene practices of a female coworker, made sexually suggestive jokes, discussed pornography, made comments about raping women and children, and threw balled-up tape at Tibodeau's breasts and backside. As a result of this conduct, Tibodeau terminated her employment with CDI after her

boyfriend, who also worked at CDI, was fired. The jury found Tibodeau was constructively discharged.

## II.

## A.

For its first claim of error, CDI contends the district court erred in denying CDI's motion for directed verdict on CDI's statute of limitations defense. Our review is for the correction of legal error. *See James v. Burlington N., Inc.*, 587 N.W.2d 462, 464 (Iowa 1998).

To prevail on its statute-of-limitations defense, CDI was required to prove the relevant statute of limitations lapsed prior to the initiation of the action and no savings statute applied. *See Furnald v. Hughes*, 804 N.W.2d 273, 275–76 (Iowa 2011) (discussing the purpose of statutes of limitation and savings statutes).

The relevant limitation periods are set forth in the Iowa Civil Rights Act. As a prerequisite to pursuing a claim arising under the act, "[a] person claiming to be aggrieved by an unfair or discriminatory practice must initially seek an administrative relief by filing a complaint with the [Iowa Civil Rights Commission] in accordance with section 216.15." Iowa Code § 216.16(1). Section 216.15 provides the complaint must be filed "within three hundred days after the alleged discriminatory or unfair practice occurred." Iowa Code § 216.15(13). The complainant may seek relief in the district court upon receiving an administrative release, commonly called a right-to-sue letter, from the commission. *See* Iowa Code § 216.16(2). The complainant must commence an action in the district court "within ninety days after issuance by the commission of a release" otherwise the action "is barred." Iowa Code § 216.16(4). In this case, Tibodeau

timely filed a complaint with the commission. She received an administrative release on July 31, 2014. She filed her petition in Winnebago County on October 7, 2014, within the ninety-day filing period.

After Tibodeau filed her action in Winnebago County, CDI filed a motion for a change of venue, contending the proper venue was in Hancock County. On October 31, the district court granted the motion and transferred the case to Hancock County and ordered Tibodeau to pay twenty dollars in costs to CDI. *See* Iowa R. Civ. P. 1.808(1) ("An action brought in the wrong county may be prosecuted there until termination, unless a defendant, before answer, moves for change to the proper county. Thereupon the court shall order the change at plaintiff's costs, which may include reasonable compensation for defendant's trouble and expense, including attorney's fees, in attending in the wrong county."). The costs were due within twenty days of the district court's order. *See* Iowa R. Civ. P. 1.808(2) ("If all such costs are not paid within [twenty] days of the transfer order, the action shall be dismissed."). Tibodeau did not pay the costs within twenty days of the district court's order. On December 2, CDI filed a motion to dismiss the action due to Tibodeau's failure to pay the costs within the twenty-day period. On January 30, 2015, the district court granted the motion, dismissed the action in Winnebago County, and immediately reinstated the action in Hancock County because the costs had been paid by that time, although not timely paid. *See* Iowa R. Civ. P. 1.808(2) ("Upon payment of the costs, the clerk shall forthwith transmit to the proper court the transcript of the proceedings, with any original papers, an authenticated copy of which shall be

retained. The case shall be docketed in the second court without fee and shall proceed.").

CDI contends this action is barred because the action was dismissed and then reinstated outside the ninety-day period of limitation. Tibodeau contends the reinstated action is merely a continuation of the first and is thus timely filed. As the parties have framed the argument, at issue is our savings statute, Iowa Code section 614.10, which states "[i]f, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first."[1] "The purpose of a savings statute is to prevent minor or technical mistakes from precluding a plaintiff from obtaining his day in court and having his claim decided on the merits." *Furnald*, 804 N.W.2d at 276.

Under the circumstances, we cannot conclude Tibodeau was negligent in her prosecution of her action. Tibodeau timely filed her administrative complaint, obtained her administrative release, and timely filed her action in the district court. Tibodeau was unsuccessful in resisting the motion for change of venue and should have timely paid the costs. Tibodeau's counsel explained the costs were not timely paid because there were no instructions on how to make the

---

[1] We question whether the statute of limitations and the savings statute are truly at issue. The savings statute is applicable where a prior action is dismissed and "a new one" is brought within six months after dismissal. *See, e.g., Veatch v. Bartels Lutheran Home*, 804 N.W.2d 530, 536 (Iowa Ct. App. 2011) (discussing meaning of "a new one" within the meaning of Iowa Code section 614.10). When applicable, the statute makes the "second" action a continuation of the first. Here, the district court dismissed the plaintiff's action but immediately "reinstated" the action. To "reinstate" means to "place again in a former state or position." *Reinstate*, Black's Law Dictionary (10th ed. 2014). Tibodeau's action thus does not appear to be "a new one" or "second" action within the meaning of the statute but rather a single, continuous action.

payment to the clerk of court using the EDMS system, which had recently been implemented in both counties. Tibodeau's counsel called the county clerk for assistance. The county clerk could not determine the proper payment procedure so counsel simply mailed twenty dollars to CDI's counsel's office. The payment admittedly was not timely. However, the concept of a savings statute

> generally seems clear enough. For example, substantial argument can be made that a timely but highly contested claim that is ultimately dismissed for lack of subject matter jurisdiction, personal jurisdiction, venue, or for some arcane pleading or other procedural defect, should not leave a plaintiff without a day in court because of the expiration during the pendency of the action by the statute of limitations.

*Id.* The district court correctly determined that the statute of limitations did not bar this action.

B.

CDI claims the district court erred in excluding certain evidence. Specifically, CDI contends the district court erred when it refused to allow CDI to present evidence Tibodeau used marijuana while employed with CDI. CDI preserved error by making an offer of proof. *See In re Marriage of Daniels*, 568 N.W.2d 51, 55 n.2 (Iowa Ct. App. 1997). We review the exclusion of evidence for an abuse of discretion. *Shawhan v. Polk Cty.*, 420 N.W.2d 808, 809 (Iowa 1988). "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001) (quoting *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997)). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous

application of the law." *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000).

The district court concluded the evidence was relevant in two respects. Arguably, Tibodeau's drug use impacted her perception of workplace conduct. Second, Tibodeau's nurse practitioner, Rhonda Cooper, stated marijuana use would decrease the effectiveness of Tibodeau's treatment for depression and anxiety. Tibodeau's marijuana use was thus marginally relevant to damages because it demonstrated a failure to mitigate her depression and anxiety.

The district court also concluded the probative value of the evidence would be substantially outweighed by unfair prejudice. *See* Iowa R. Evid. 5.403. As a general rule, evidence of drug use, in a case unrelated to drugs, will likely result in unfair prejudice. *See Shawhan*, 420 N.W.2d at 810. Generally, admitting this type of evidence increases the likelihood that a jury will rule against a drug-using party because that person is "bad." *Id.*

As a general proposition "[a]dmission is justified where there is a showing the use of an illegal drug has relation to the incident in question and/or where it is relevant to the damage issue." *Ward v. Loomis Bros.*, 532 N.W.2d 807, 811 (Iowa Ct. App. 1995). While this court may have decided the issue differently than the district court, it is not for this court to substitute its judgment for the district court. Instead, we are to determine whether the district court abused its discretion in excluding the evidence. The district court's exclusion of Tibodeau's marijuana use while employed with CDI was done after a careful balancing of the probative value of the evidence and its potentially unfair prejudicial effect. The district court's rationale was consistent with the general skepticism regarding the

use of evidence of drug use in non-drug cases. *See Shawhan*, 420 N.W.2d at 810 (determining that evidence of past drug use could not be used to determine damages for future pain and suffering because it is too prejudicial); *Putnam v. Kalber*, No. 12-1040, 2013 WL 1223648, at *3 (Iowa Ct. App. Mar. 27, 2013) (determining that a positive drug test showing driver used marijuana within the previous thirty days was too prejudicial); *Bellville v. Farm Bureau Mut. Ins. Co.*, No. 02-0263, 2003 WL 1968847, at *4 (Iowa Ct. App. Apr. 30, 2003) (determining that evidence of chronic drug use is too prejudicial to be admitted, even when determining damages according to life expectancy). We acknowledge the merit in CDI's central point—the prejudicial effect, if any, of the evidence would have been negligible because there was other evidence showing Tibodeau used marijuana before and after her employment with CDI. However, CDI was not prevented from presenting a vigorous challenge regarding damages, introducing evidence that marijuana can negate the positive impact of prescribed medications and that Tibodeau often used marijuana after her employment with CDI terminated.

Ultimately, "[t]his court should reverse only when justice would not be served by allowing the trial court judgment to stand." *Shawhan*, 420 N.W.2d at 810. We cannot conclude justice requires reversal under the circumstances.

C.

CDI contends the district court should have granted its motion for mistrial or new trial based on Tibodeau's counsel's cumulative misconduct. We review the district court's ruling on a motion for mistrial for an abuse of discretion. *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 873 (Iowa 1989).

"We give extremely broad, though not unlimited, discretion to a trial court on motions for mistrial and new trial." *Id.* at 874 (citing *Yeager v. Durflinger*, 280 N.W.2d 1, 7–8 (Iowa 1979)). "In order to show an abuse of discretion, one generally must show that the court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Rosenberger Enters., Inc. v. Ins. Serv. Corp. of Iowa*, 541 N.W.2d 904, 906–07 (Iowa Ct. App. 1995) (citing *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976)).

"A new trial is required for improper conduct by counsel if it appears that prejudice resulted or a different result would have been probable but for any misconduct." *Id.* (citing *Tratchel v. Essex Grp., Inc.*, 452 N.W.2d 171, 178 (Iowa 1990)). District courts are best suited to determine if misconduct is prejudicial. *Id.* We consider several factors when determining if misconduct resulted in prejudice. Those factors include

> [(1)] the severity and pervasiveness of the misconduct, [(2)] the significance of the misconduct to the central issues in the case, [(3)] the strength of the [plaintiff's] evidence, [(4)] the use of cautionary instructions or other curative measures, and [(5)] the extent to which the [objecting party] invited the improper conduct.

*State v. Ayabarreno*, No. 13-0582, 2014 WL 465761, at *4 (Iowa Ct. App. Feb. 5, 2014).

The first claimed instance of misconduct was Tibodeau's counsel's use of a golden rule argument during her closing summation. "A 'golden rule' argument is where counsel asks the jurors to put themselves in the place of a party or victim. Courts frown upon this type of appeal to the emotions or personal interests of the jurors." *Id.* "These rules ensure the case is decided solely on the evidence." *State v. Musser*, 721 N.W.2d 734, 755 (Iowa 2006). CDI's counsel

objected to the golden rule argument. The district court sustained the objection, stating "[c]ounsel shall refrain from having the jurors put themselves in the place of—of a—either party." The district court then took curative measures, reminding the jury that statements made during closing arguments are not evidence and instructing the jurors to rely on their recollection of the evidence.

The second claimed instance of misconduct was Tibodeau's counsel misstated the evidence in the record during closing summation when she stated two CDI employees directed certain profane comments toward Tibodeau. Review of the record reveals Tibodeau's counsel actually only discussed a single profane phrase. Regardless, counsel's statements were not supported by the record. "This irrelevant fact was outside the record in this case and improper." *State v. Graves*, 668 N.W.2d 860, 875 (Iowa 2003).

The third claim of misconduct was Tibodeau's counsel reference to another sexual harassment complaint at CDI but involving another person. CDI contends Tibodeau's counsel violated an order in limine. The order in limine prohibited counsel from referencing a complaint CDI employee Sequoyah Turnmeyer filed against her coworker Larry Eenhuis. During opening statements, counsel referenced Turnmeyer's complaint, but CDI did not object. CDI objected to counsel asking Eenhuis if Turnmeyer complained Eenhuis rubbed her back. The objection was sustained, and the question was withdrawn. During closing arguments, Tibodeau's counsel argued Eenhuis was unaware of Turnmeyer's complaint regarding his conduct. CDI objected to the statement, arguing the information was not in the record. However, the evidence was in the

record; Eenhuis testified he was unaware of Sequoyah's complaint until his deposition.

CDI argues the cumulative effect of these actions inflamed the jury and resulted in excessive damages. We disagree. Here, application of the *Ayabarreno* factors does not indicate the district court abused its considerable discretion in denying the motion. The conduct was not pervasive or severe within the context of a five-day jury trial. *See Ayabarreno*, 2014 WL 465761, at \*4. Indeed, some of the purported misconduct was not misconduct at all. The misconduct was not of great importance to the central issues in the case. The district court provided the jury with appropriate instruction that counsel's closing argument was not evidence both in the jury instructions and again during closing argument in response to counsel's golden rule violation. *See id.* Finally, the plaintiff's evidence was very strong.

"Before a new trial will be granted for misconduct in argument it must appear prejudice resulted or a different result could have been probable but for such conduct." *Andrews v. Struble*, 178 N.W.2d 391, 402 (Iowa 1970) (quoting *Rasmussen v. Thingles*, 174 N.W.2d 384, 391 (Iowa 1970)). The district court was in the best position to determine if misconduct was prejudicial. *See Rosenberger Enters., Inc.*, 541 N.W.2d at 906–07. We give great deference to the district court's denial of motion for mistrial and motion for new trial. CDI suffered no prejudice from these claimed instances of misconduct.

D.

CDI argues the district court erred in submitting an "eggshell plaintiff" instruction to the jury. CDI further argues the district court erred in also

submitting an aggravating-condition instruction to the jury without an adequate explanation of how the jury was to apply both instructions in the case.

"We review a trial court's instructions for correction of legal error." *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 569 (Iowa 1997). "When considering whether evidentiary support for an instruction exists, we give the evidence the most favorable construction it will bear." *Hughes v. Massey-Ferguson, Inc.*, 522 N.W.2d 294, 295 (Iowa 1994) (citing *Sandhorst v. Mauk's Transfer, Inc.*, 252 N.W.2d 393, 399 (Iowa 1977)). "As long as a requested instruction correctly states the law, has application to the case, and is not stated elsewhere in the instructions, the court must give the requested instruction." *Vaughn v. Must, Inc.*, 542 N.W.2d 533, 539 (Iowa 1996) (citing *Adam v. T.I.P. Rural Elec. Corp.*, 271 N.W.2d 896, 901 (Iowa 1978); *Turner v. Jones*, 215 N.W.2d 289, 291–292 (Iowa 1974)).

We first address CDI's challenge to the "eggshell plaintiff" instruction. As a general rule, the instruction is applicable "when the pain or disability arguably caused by another condition arises *after* the injury caused by the defendant's fault has lighted up or exacerbated the prior condition." *Waits*, 572 N.W.2d at 577. The instruction provided:

> If the plaintiff, Britney Tibodeau, had health conditions before these incidents, making her more susceptible to injury than a person in normal health, then the defendant is responsible for all injuries and damages which are experienced by the plaintiff caused by the actions of the defendant, even though the injuries claimed produce a greater injury than those which might have been experienced by a normal person under the same circumstances.

The parties agree Tibodeau suffered from depression before the alleged harassment began. CDI claims there was no evidence Tibodeau's depression

was asymptomatic or dormant when she returned from her leave. We disagree. The district court noted that applying the concept of a dormant condition to a mental-health condition is difficult. The court determined, however, the instruction was appropriate because Tibodeau was able to resume her work without any restriction. In addition, witnesses testified Tibodeau had recovered from her depression during her leave and prior to returning to work. Tibodeau's former boyfriend testified Tibodeau was ready to go back to work and was tired of being at home. Tibodeau testified she had recovered. Although CDI may find the evidence not credible, we give the evidence the most favorable construction it will bear. Under this standard, there was sufficient evidence to warrant the instruction.

CDI also argues the district court erred in submitting an aggravating-condition instruction to the jury without an explanation of how the jury was to apply this instruction in combination with the eggshell plaintiff instruction. The instruction provided as follows:

> If you find Plaintiff had mental health conditions before this incident and this condition was aggravated by this incident causing further suffering then she is entitled to recover damages caused by the aggravation. She is not entitled to recover for any physical ailment or disability which existed before this incident or for any injuries or damages which she now has which were not caused by the defendant's actions.

CDI is correct that it was error to submit this instruction without an additional explanation. *Waits* established the need for clarifying language when both aggravation and eggshell instructions are submitted to a jury. 572 N.W.2d at 578. But we need not discuss the issue any further. As noted by the district court in its denial of CDI's motion for new trial, CDI never objected to this

instruction, generally, or requested the additional explanatory language required by *Waits* be added to the instruction, specifically.  We agree with the district court that the error was not preserved.  *See* Iowa R. Civ. P. 1.924 (providing "all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and one what grounds" and "[n]o other grounds or objections shall be asserted thereafter, or considered on appeal"); *Smith v. Air Feeds, Inc.*, 556 N.W.2d 160, 164 (Iowa Ct. App. 1996) (holding party failed to preserve claim the cumulative effect of instructions was confusing where the argument was not made to the district court).

E.

Finally, CDI claims the jury improperly considered CDI's possible insurance coverage when determining damages.  The district court denied this claim for relief.

The refusal to grant a new trial based on evidence of juror misconduct is reviewed for an abuse of discretion.  *State v. Jones*, 511 N.W.2d 400, 409 (Iowa 1993).  "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'"  *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015) (quoting *Rodriquez*, 636 N.W.2d at 239).  "A trial court has broad discretion in determining whether claimed misconduct on the part of a juror justifies a new trial."  *Jones*, 511 N.W.2d at 409 (citing *State v. Fedderson*, 230 N.W.2d 501, 514 (Iowa 1975)).  "[J]uror affidavits may be used to impeach a verdict if *external* pressures affected that verdict, but may not use such affidavits to impeach a verdict based

on *internal* workings of a jury." *Lund v. McEnerney*, 495 N.W.2d 730, 733 (Iowa 1993).

CDI's attempt to impeach the verdict on the basis of juror misconduct fails. CDI submitted no juror affidavit in support of its claims. Instead, it submitted an affidavit from a private investigator, summarizing his conversations with two jurors. CDI also submitted an affidavit from an individual, Mark Newman, stating he spoke to the private investigator, who spoke with two additional jurors and summarized the private investigator's conversations with the jurors. Further, CDI's complaints relate to the jury's internal workings and not to external conduct. With limited exceptions not relevant here, we do not inquire into the deliberations of the jury. CDI conceded or essentially conceded during oral argument this claim is without merit. The district court did not abuse its discretion when it refused to set an evidentiary hearing or order a new trial on the ground of juror misconduct.

## III.

For the foregoing reasons, we affirm the judgment of the district court. Tibodeau has requested appellate attorney fees. We grant the request for appellate attorney fees. We remand this matter to the district court to determine the amount of the fee award.

**AFFIRMED AND REMANDED.**