Harold L. KIRK, Plaintiff–Appellee,

v.

UNION PACIFIC RAILROAD, a Utah Corporation, Defendant–Appellant,

Alter Trading Company, an Iowa Corporation; and Help, Inc., an Iowa Corporation, Defendants.

No. 92–1466.

Court of Appeals of Iowa.

Jan. 25, 1994.

Maynard S. Telpner and Roger Sawatzke of Telpner, Smith, Sawatzke & Ruesch, Council Bluffs, and William M. Lamson, Jr. and Raymond E. Walden of Kennedy, Holland, DeLacy & Svoboda, Omaha, NE, for appellant.

Terry K. Gutierrez, William E. Gast, and Christopher D. Curzan of Schmid, Mooney & Frederick, P.C., Omaha, NE, and Richard D. Crotty, Council Bluffs, for appellee.

Heard by DONIELSON, P.J., and SCHLEGEL, J., and KEEFE, Senior Judge.*

SCHLEGEL, Judge.

Union Pacific Railroad appeals a jury verdict finding it eighty-five percent at fault for damages resulting from a railroad car which rolled over Kirk's right leg. Union Pacific argues the district court erred in: (1) failing to instruct the jury on its theories of defense; and (2) excluding certain evidence.

In January 1990 Harold Kirk began working at the scrap metal recycling plant in Council Bluffs operated by Alter Trading Company. Kirk was working for Alter through Help, Inc., a temporary labor agency. Normally Kirk worked in the area of the railyard where a shredder chopped up junk cars. Kirk would pick the nonmetal scrap off a conveyor belt before the metal was loaded into rail cars.

On April 3, 1990, Kirk reported to work after a night of bar-hopping and an early morning visit to a bar for two beers. The shredder was broken down that day, so Kirk was told to pick the visible nonmetal scrap from loaded gondola railway cars. This procedure is performed from on top of the gondola cars and is called "walking" the car. Normally Alter had employees walk loaded gondolas on tracks seven and eight, the tracks near Alter's machinery that loaded the cars; more assistance is given on these tracks to watch out for anything coming down the track.

Around noon, Dave Snyder, the Alter superintendent who was filling in that day for the regular rail traffic coordinator, asked Kirk to walk two gondolas on track three after his lunch break. Union Pacific uses track three to build its trains. Leslie Hansen, the Union Pacific fieldman who was working as switchman in that part of the yard, knew that Alter occasionally walked gondolas on track three. He says Alter had always told him when Alter would be walking cars on track three in the past.

Snyder says he "vaguely" recalls telling Hansen that an Alter employee would be walking the cars on track three that afternoon. Hansen says he was never told this. Terry Peterson, the foreman of the Union Pacific switch crew, was present when Snyder told Hansen the two gondolas would be moved to track three. He says Snyder never mentioned anything about walking the cars.

Kirk says he began walking Alter's two cars on track three at 12:30 or 12:45 p.m. Four empty cars had previously been "kicked" down the track; that is, released to roll down and couple with the cars already there. At 1:57 p.m. the train crew kicked

four more cars down track three. When these four cars bumped into the six stationary cars on the track, Kirk seriously injured his leg and broke a finger. The southwestern wheel of one of the loaded gondolas rolled over Kirk's right leg.

Kirk's leg had to be amputated above the knee. In April 1991 Kirk's physician formally released him to return to work, but Kirk has not obtained work of any type. Kirk filed suit against Union Pacific, Alter, and Help, Inc. Kirk alleges he was walking one of the cars and did not see the other cars coming. He states that he was thrown down to the ground on impact. Alter settled with Kirk, and Kirk proceeded to trial against Union Pacific.

As part of its defense, Union Pacific sought to argue that Kirk was not working on top of the cars but was doing something on the ground between or underneath the cars. Kirk made a motion in limine to exclude the testimony of Professor Sokol, Union Pacific's accident reconstruction expert. The district court sustained the motion and excluded the testimony, ruling it "was based on speculation and conjecture, and in some instances unfounded factual testimony." In an offer of proof, Sokol explained how he had reconstructed the accident. He explained that he found that the "kicked" railroad cars would not travel far enough for there to be time for Kirk to have been bumped off the top of a gondola, to fall, and to have his leg severed.

After a trial, the jury returned a special verdict allocating zero percent of the fault to Kirk, fifteen percent to Alter, and eighty-five percent to Union Pacific. Total damages were placed at $752,773.49.

Union Pacific appeals. We affirm. Union Pacific advances the following arguments on appeal: (1) Union Pacific had no duty to inspect for an Alter employee since Union Pacific had not been informed of and had not given consent to the employee's presence (Union Pacific requested, and was denied, an instruction on the duty owed to an unknown trespasser); (2) the district court erred in not giving any instruction on Kirk's duty to minimize damages; (3) the instruction specifying the fault of the parties unduly emphasized Union Pacific's fault while minimizing the fault of Alter and Kirk; (4) the district court abused its discretion in excluding Sokol's testimony; and (5) the district court erred in excluding Kirk's original petition which Union Pacific alleges contains a significant admission as to Alter's negligence.

■ Three of the issues raised by Union Pacific in this appeal pertain to the district court's alleged failure to instruct the jury on a theory of defense allegedly supported by substantial evidence in the record. Our standard of review with respect to these issues is for the corrections of errors of law. *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 685 (Iowa 1990).

> Generally, Iowa law requires that a court give an instruction when it states a correct rule of law having application to the facts of the case and the concept is not otherwise embodied in other instructions. There must be substantial evidence in the record to support the instruction submitted. Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. In weighing the sufficiency of the evidence, we give it the most favorable construction it will bear in favor of the party seeking submission.

*Coker v. Abell–Howe Co.*, 491 N.W.2d 143, 150 (Iowa 1992) (citations omitted). "[E]rror in giving or refusing to give a particular instruction does not warrant reversal unless the error is prejudicial." *Smith*, 464 N.W.2d at 685 (citing *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 868 (Iowa 1989)).

Having carefully reviewed both the record and the parties' appellate arguments, we conclude the trial court did not err in refusing to instruct the jury concerning: (1) the duty owed to an unknown trespasser; (2) the duty to minimize damages; and (3) the defendant's "proposed specifications of the plaintiff's and settling party's fault" (which allegedly resulted in unduly emphasizing the defendant's fault). We conclude the concepts conveyed in the defendant's proposed instructions are either not supported in the record by substantial evidence or are other-

wise embodied in other instructions submitted to the jury.

■ With regard to the proposed unknown trespasser instruction, the district court determined:

There were a number of requests here that were made by the Plaintiff for inclusion of a number of instructions that were requested that, in the Court's opinion are—that the requests are not theories that are in this case. The question of trespass is not a theory of law that is applicable in these circumstances where you have individuals who are known to have a right to be where they are, under certain protected circumstances. The duties that flow between possessors of land and trespassers, or people who, all the way from trespass to business invitee, are different from what we have here.

We agree with the district court. Viewing the evidence presented in the light most favorable to the party moving for submission of the instruction, we cannot say that substantial evidence exists in the record from which a reasonable mind could conclude that Kirk constituted an unknown trespasser upon Union Pacific's property.

Kirk had been authorized by Alter to walk two loaded gondola cars on track three the afternoon of the accident. While it is true that Alter normally directed its employees to walk loaded gondola cars on tracks seven and eight, Union Pacific was undeniably aware that Alter's business practice had included in the past directing personnel to walk "released" cars waiting on track three as well. Furthermore, Leslie Hansen, the Union Pacific fieldman who was working as switchman in that part of the yard on the afternoon of the accident, knew that Alter did walk gondola cars on track three. The rule of law concerning an unknown trespasser has no application to the facts of the present case.

■ Similarly, we cannot say that substantial evidence exists to support the defendant's proposed instruction regarding the plaintiff's duty to mitigate damages. The Comparative Fault Act in Iowa provides that fault includes an unreasonable failure to mitigate damages. Iowa Code § 668.1(1) (1991);

*Miller v. Eichhorn*, 426 N.W.2d 641, 643 (Iowa App.1988). In determining whether a party has failed to mitigate damages, the defendant has the burden of demonstrating that the failure to mitigate was unreasonable under the circumstances. *Tanberg v. Ackerman*, 473 N.W.2d 193, 195–96 (Iowa 1991).

On appeal, Union Pacific contends the plaintiff failed to mitigate his damages by either seeking or accepting employment or by undergoing vocational training following the amputation of his leg. The evidence adduced at trial indicated that Kirk was not medically permitted to work for approximately the first year after his tragic accident. Thereafter, he was released by his doctor for light work, if possible.

Following an investigation of Kirk, Kirk's vocational rehabilitation counselor concluded that "prospects for employment were rather grim unless he were provided with some rehabilitation assistance...." Given the discomfort and restricted abilities of Kirk, following the amputation of his leg, the vocational rehabilitation counselor concluded that "getting this gentleman back to work would be a major effort...." Regarding Kirk's recovery, his physical therapist testified that Kirk was consistent in coming to physical therapy and always attempted everything the physical therapist asked him to do.

The defendant's rehabilitation expert who reviewed Kirk's records opined that Kirk would do well to enroll in some form of an adult education program or other vocational training in order to further his employment opportunities. However, on cross-examination, the expert admitted that his evaluation was theoretical, since he did not consider the plaintiff's stress and trauma with respect to the plaintiff's ability to seek employment. Our review of the evidence adduced at trial leads us to the same conclusion as that reached by the trial court: the proposed instruction was not warranted by substantial evidence.

■ Finally, we conclude the trial court did not err in denying the defendant's proposed instructions concerning the defendant's proposed specifications of the plaintiff's and settling party's fault. The defendant's pri-

mary complaints in this regard are that the trial court did not include: (1) specifications of the plaintiff's contributory fault instructing on the plaintiff's duty to maintain a proper lookout; or (2) specifications of Alter's negligence in failing to implement a blue flag procedure or other warning system to alert the train crew to Kirk's presence and in failing to send a second man with Kirk to serve as a lookout for the approach of rail cars on track three. We find that all of these concepts are embodied in other instructions that were submitted to the jury.

Specifically, we believe the defendant's proposed specification regarding the plaintiff's duty to maintain a proper lookout is adequately conveyed in Jury Instruction 22, which provided in relevant part:

> In order to prove fault, the Defendant must prove the Plaintiff was negligent in one or more of the following ways:
>
> a. In failing to exercise reasonable and ordinary care for his own safety and protection.

Likewise, the proposed specification regarding Alter's negligence in failing to implement a warning system to alert the train crew to Kirk's presence and in failing to send a second man with Kirk to serve as a lookout are embodied in Jury Instruction 24 which stated in relevant part:

> Union Pacific, claims the settling party, Alter Trading Company, was at fault in one or more of the following particulars:
>
> A. In failing to provide a reasonably safe place for Harold Kirk to work under the circumstances then and there existing.
>
> \*  \*  \*  \*  \*  \*
>
> C. In failing to notify the Union Pacific crew that Harold Kirk was present on or about track number three and rail cars that had been released to Union Pacific.
>
> \*  \*  \*  \*  \*  \*
>
> E. In failing to comply with a custom between Alter Trading Company and Union Pacific which required Alter Trading Company to notify Union Pacific if Alter Trading Company's workers were on or around track or rail cars that had been released to Union Pacific.

Accordingly, we conclude the trial court did not err in refusing to instruct the jury as requested by the defendant, as discussed above.

■ Next, the defendant claims the trial court abused its discretion by excluding the testimony of the defendant's accident reconstruction expert. The admissibility of expert opinion testimony is a matter committed to the sound discretion of the district court. *Poyzer v. McGraw*, 360 N.W.2d 748, 752 (Iowa 1985). "However, the general rule is one of liberality in admission." *Hunter v. Board of Trustees*, 481 N.W.2d 510, 519 (Iowa 1992) (citing *State v. Halstead*, 362 N.W.2d 504, 506 (Iowa 1985)).

In order to show an abuse of discretion, one generally must show that the court exercised its discretion " 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976) (quoting *Weeks v. Burnor*, 132 Vt. 603, 326 A.2d 138, 140 (1974)). "As long as there is some support in the record for the trial court's action, we will not reverse." *Hunter*, 481 N.W.2d at 519 (citing *State v. Frank*, 298 N.W.2d 324, 327 (Iowa 1980)).

■ In the present case, the plaintiff filed a motion in limine seeking to preclude the defendant from making any mention, in any manner whatsoever, as to:

> Any and all reconstructive, engineering, or scientific evidence, speculative in nature, taking the form of expert opinions, concerning or addressing the probable whereabouts of Plaintiff in the moments immediately preceding the Plaintiff's accident which is the basis for the instant lawsuit; specifically including, but not limited to, any opinions as to where Plaintiff was located and/or where Plaintiff was *not* located during said time frame.

At trial, the defendant made an offer of proof of the testimony of Professor Ted Sokol, the defendant's accident reconstruction expert. Following the proffer, the trial court stated its ruling on the pretrial motion in limine, explaining:

> And for purposes of clarifying the record in entirety, the offer of proof procedurally

requires no comment by the Court, and I don't believe that the record has disclosed in writing that the motions in limine were timely submitted prior to commencement of the trial, and the Court ruled the expert witnesses would be excluded, particularly Dr. Sokol, and Dr. Pepe was a rebuttal expert witness, for the reason that it was the Court's opinion that the exclusion of these expert witnesses was not going to deter from any of the proof that was available to the parties, either on the part of the Plaintiff making a prima facie case, or on the part of the Defendant in making a proper defense. And a review of those depositions, in the event there is an appeal to the Supreme Court of Iowa was—the [sic] were read by the Court, and it was the opinion of the Court that much of what was intended to be determined by Dr. Sokol was based on speculation and conjecture, and in some instances unfounded factual testimony, which was then attempted to be fortified by additional testing; and in conclusion, it is the opinion of the Court that it was not discretionarily proper expert witness subject matter that was going to help the Jury in this case.

Through Professor Sokol's testimony, the defendant sought to show that, "given the time it would have taken Kirk to fall from his claimed position at the top of the car onto the track as a result of kicking the final four empty gondolas into the four empty hoppers and two loaded gondolas, the wheel of the gondola car that ran over Kirk's leg would ... not have continued to roll nearly far enough to account for the damage actually done to Kirk's leg, assuming that Kirk's starting position was on top of the car." However, as the trial court noted in ruling upon the admissibility of Professor Sokol's testimony, he did not possess sufficiently complete factual data to permit the reconstruction of the accident in any way which could be considered anything more than mere speculation or conjecture.

Here, although the railroad cars involved in the tests conducted by Professor Sokol were similar to the cars involved in the accident, they were not the same cars. Professor Sokol admitted on cross-examination that no accounting was taken for potential differences in such resulting variables between the cars as brake type, brake shoe condition, draft gear condition, striker plate absorption upon impact, wheel bearing condition, coupler shock absorber condition, or brake actuating equipment in general. In addition, no accounting was made for the differences between the distribution of those loads within the cars involved in the accident and those loads involved in the tests.

At the time of the accident, the railroad car on which Kirk was standing was part of a line of standing cars, the brakes of one of which were engaged. In Professor Sokol's tests, the brakes of one of the cars was also engaged; however, there was no verification, other than the recollection and estimation of the brakeman, that the engagements of the brakes were the same.

Also, no verification was made, other than the engineer's recollection and estimation, that the impact speeds in the tests were the same as the impact speed in the accident. Furthermore, at least with regard to the first series of tests conducted by Professor Sokol, the record indicates that no visual record was made from which an examination could be conducted to determine whether the tests were accurately performed or whether test results were properly measured.

Citing *Preferred Marketing Associates Co. v. Hawkeye National Life Insurance Co.*, 452 N.W.2d 389, 393 (Iowa 1990), the defendant argues that any criticisms the plaintiff may have concerning Professor Sokol's methodology or exact comparisons go to the weight to be afforded the evidence, rather than to its admissibility. However, as the supreme court noted in *Hunter*, Iowa Rule of Evidence 702 requires the subject matter of the expert's testimony to at least constitute " 'scientific, technical or other specialized knowledge [that] will *assist* the trier of fact to understand the evidence or to determine a fact in issue.' " *Hunter*, 481 N.W.2d at 519 (quoting Iowa R.Evid. 702) (emphasis in original); *see also Haumersen v. Ford Motor Co.*, 257 N.W.2d 7 (Iowa 1977) (facts upon which expert bases his proffered opinion must be sufficient to enable the witness to express an opinion which is more than mere

**740**

conjecture); *Iowa Power & Light Co. v. Stortenbecker,* 334 N.W.2d 326 (Iowa App.1983) (in order for expert's opinion to be competent, sufficient data must be present upon which expert judgment can be made; such facts must be sufficient for witness to reach a conclusion which is more than mere conjecture or speculation).

The facts of this case tend to indicate that Professor Sokol's expert opinion was not simply "flawed because it was based on a faulty assumption." *See Preferred Mktg. Assocs. Co. v. Hawkeye Nat'l Life Ins. Co.,* 452 N.W.2d 389, 393 (Iowa 1990). Rather, the aggregate effect of numerous failures to account for potential variable differences between the actual accident and the simulation of the accident, coupled with the inability to verify the impact speed of the cars and the engagement of the brakes, reveals the foundational failure of the evidence to *assist* the trier of fact in *accurately* determining facts in issue. *See* Iowa R.Evid. 702.

■ Finally, the defendant argues the district court erred in excluding Kirk's original petition which Union Pacific alleges contains a significant admission regarding Alter's negligence. We find this argument to be without merit. Union Pacific offered at trial an excerpt of the plaintiff's original petition at law, which was deleted from the amended petition filed after the plaintiff reached a settlement with Alter. The deleted excerpt alleged that "a sole and/or concurring proximate cause of Plaintiff's ... injuries and damages was the negligence of Defendant–Alter," and set out five specific allegations about Alter's negligence.

■ The defendant cites *Poyzer v. McGraw,* 360 N.W.2d 748, 752 (Iowa 1985), for the proposition "that once a pleading is filed, it cannot be erased, and it is admissible. It is up to the party that withdrew or amended the pleading to explain why the admissions were made in the original pleading." Iowa law is clear that a party's *admission* made in a previously-filed pleading may properly be introduced. *See Clubb v. Osborn,* 260 Iowa 223, 227, 149 N.W.2d 318, 320 (1967). However, in the present case, we cannot say the plaintiff's early factual *allega-* tions of negligence against Alter rise to the level of a factual *admission.*

Here, the excerpt sought to be admitted by the defendant does not constitute an admission made or conduct undertaken by the plaintiff wherein he acknowledged or conceded a particular point of fact. Rather, the plaintiff simply made an allegation with regard to the claimed negligence of Alter which was necessary to sufficiently state a cause of action under Iowa law. We conclude the trial court did not abuse its discretion by prohibiting the defendant from reading the excerpts of the plaintiff's original petition at law where the excerpts did not constitute an admission on the part of the plaintiff.

In accordance with the above resolution of the issues advanced on appeal, we affirm the jury's verdict finding Union Pacific Railroad eighty-five percent at fault for the damages sustained by Kirk.

**AFFIRMED.**