Timothy Gene SMITH, Plaintiff–Appellant,

v.

AIR FEEDS, INC., Defendant–Appellee,

and

D.J. Engineering, Inc.; Ron Mullins; David Juntila; and Merlyn Okland, Defendants.

No. 95–0222.

Court of Appeals of Iowa.

Sept. 30, 1996.

Donald G. Beattie and Ed Skinner of Skinner, Beattie & Wilson, P.C., Altoona, for plaintiff–appellant.

James A. Lorentzen, Michael D. Huppert, and Scott S. Bellis of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, L.L.P., Des Moines, for defendant–appellee.

Heard by SACKETT, C.J., and HABHAB and STREIT, JJ.

HABHAB, Judge.

This is an appeal from a products liability action instituted after plaintiff Timothy Smith was injured while operating a press. We affirm.

Smith was injured on September 26, 1989, while operating a press in the course of his employment for Putco, Inc. At the time of his injury, he was operating a Komatsu press which was connected to a feeder manufactured by defendant Air Feeds, Inc., which fed metal into the press. The press was equipped with palm buttons to activate the ram of the press.

The control panel of the feeder included a switch which controlled the clamping action of the feeder. The switch located directly below that switch was labeled "adjust stroke, FCP, PCF." In the PCF position, the feeder was designed so the press could control the feeder. In the FCP mode, the feeder could control the function of the press. While Smith had his left hand in the die area of the press, he reached with his other hand to the

feeder control panel intending to turn the switch to loosen the clamping action. Smith instead inadvertently turned the "adjust stroke" switch from the PCF mode to FCP. This caused the press ram to activate, severing his hand.

Putco had purchased the feeder from Air Feeds in 1983. Putco experienced some problems in connecting the feeder to the press. Air Feeds recommended Putco contact Ron Mullins of D.J. Engineering. Putco did so and Mullins ultimately developed an interlock design which overrode the palm buttons on the press. This allowed the feeder to be used to activate the press ram through the PCF–FCP switch. Both Mullins and Air Feeds informed Putco the circuitry change was dangerous and unsafe. Air Feeds recommended point guarding be installed to provide safety for the operator. Putco did not follow this recommendation.

Smith filed suit against Air Feeds, Merlyn Okland (as a co-employee), Ron Mullins, D.J. Engineering, and David Juntila (former president of D.J. Engineering). Smith alleged numerous claims including strict liability, negligence, breach of warranty, conspiracy, breach of contract, negligent selection of contractors, and liability under Restatement (Second) of Torts sections 323 and 324A. Smith settled with Okland prior to trial and dismissed his claims against Okland, Juntila, and D.J. Engineering.

In allocating fault, the jury was allowed to consider the alleged fault of Smith, Air Feeds, and Okland. The jury found Smith forty percent at fault, Air Feeds ten percent, and Okland fifty percent. The jury awarded $278,000 in damages and the district court entered judgment against Air Feeds for ten percent ($27,800) of that amount. Smith filed motions for a new trial and judgment notwithstanding the verdict. The trial court denied the motions with the exception that it amended the damage award to include $102,-354.11 in past medical expenses and increased plaintiff's judgment against Air Feeds by $10,235.41.

On appeal, plaintiff contends: 1) the trial court erred in submitting seven separate jury instructions regarding the conduct of other parties; 2) the trial court should not have allowed the jury to consider Okland's gross negligence; 3) the trial court erred in failing to submit his proposed jury instructions concerning agency; 4) he was entitled to a new trial because of the prejudicial effect of evidence regarding insurance coverage; 5) he was entitled to a new trial because of the inadequacy of the damages awarded by the jury; 6) the trial court should have submitted his proposed jury instructions on breach of contract; and 7) the trial court erred in allowing evidence pertaining to post-accident remedial measures.

**I. Jury Instructions—Conduct of Parties.** Smith argues the trial court erred in submitting seven separate jury instructions which related to the conduct of the parties. He made individual objections to the instructions and also contends the cumulative effect of the instructions was unduly prejudicial to him. We separately address each of his contentions.

■ **a) Comparative Fault and Assumption of Risk.** Smith asserts the trial court erred in submitting Air Feeds' proposed jury instructions on the defenses of comparative fault (instructions twenty and twenty-one) and assumption of risk (instructions twenty-seven and twenty-eight). Requested jury instructions are required to be given when they properly state the law and apply to the facts in the case. *Sumpter v. City of Moulton,* 519 N.W.2d 427, 433 (Iowa App.1994). Smith's petition pleaded claims of negligence and strict liability against Air Feeds. He requested and received instructions on both of these causes of action.

■ While assumption of risk is no longer a defense to a negligence claim, it remains a defense in strict liability actions. *Coker v. Abell–Howe Co.,* 491 N.W.2d 143, 148 (Iowa 1992).[1] Instruction twenty-eight specifically

1. The jury instruction on defense of the assumption of risk is proper in that it is limited in its application to the claim of strict liability by Smith. However, and without deciding the issue, there may be insufficient evidence to give the instruction in that it was not shown Smith knew of the probability of injury from the defective safety mechanism. Smith failed to object on

directed the jury to consider the defense of assumption of risk in conjunction with only the claim of strict liability and not in relation to Smith's theories arising out of negligence. This instruction properly limited the application of the defense of assumption of risk. The jury was properly instructed on the defenses of comparative fault and assumption of risk.

■ *b) Gross Negligence and Sole Proximate Cause.* Smith argues the court erred in submitting jury instructions on both gross negligence (instructions thirty-one and thirty-two) and sole proximate cause (instruction twenty-nine). As addressed in division II of this opinion, the issue of Okland's gross negligence was properly submitted to the jury as there was sufficient evidence of his gross negligence and he was a "party" under Iowa's Comparative Fault Act. *See* Iowa Code § 668.2(3) (1993) ("party" includes released party). Likewise, submission of an instruction on sole proximate cause was warranted under *Chumbley v. Dreis and Krump Mfg. Co.,* 521 N.W.2d 192 (Iowa App.1993) (sole proximate cause may be a defense even where a third party is immune from suit under workers' compensation laws).

■ Smith argues for the first time on appeal the seven instructions on comparative fault, assumption of risk, gross negligence, and sole proximate cause were "intertwined and repetitive" and "placed undue emphasis on the actions of Tim Smith, Putco, and Merlyn Okland" creating a "prejudicial effect." While Smith raised individual objections to the instructions before the trial court, at no point did he argue the cumulative effect of these instructions was prejudi-

cial. An objection to jury instructions must alert the trial court to the error to be preserved. *See Henkel v. R & S Bottling Co.,* 323 N.W.2d 185, 190–91 (Iowa 1982). Smith did not preserve error on this ground and we decline to review it on appeal. Even if error had been preserved, we would find this assertion to be without merit.

*II. Gross Negligence.* Even though Smith had settled with Okland prior to trial and dismissed his claim against him, the jury was instructed to consider Okland as a released party when allocating fault. *See* Iowa Code § 668.3(2)(b) (1993). The jury allocated fifty percent of the fault to Okland.

■ Smith argues there was insufficient evidence to warrant the submission of Okland's gross negligence to the jury. Appellees counter there was sufficient evidence for submission, and they also assert Smith should be judicially estopped from raising this issue on appeal. Since we find there was sufficient evidence to submit the issue of gross negligence to the jury, we need not address the application of judicial estoppel in this case.[2]

■ The elements necessary to establish a co-employee's gross negligence are: 1) knowledge of the peril to be apprehended; 2) knowledge the injury is a probable, as opposed to a possible, result of the danger; and 3) a conscious failure to avoid the peril. *Hernandez v. Midwest Gas Co.,* 523 N.W.2d 300, 305 (Iowa App.1994). The record reveals Okland had received written and oral warnings informing him the feeder and press would not be safe if they were interlocked according to the designs developed by Mul-

this ground at the hearing and failed to raise this point in his brief. Thus, objection to instruction twenty-eight was waived.

2. Smith was in the unenviable position of having asserted inconsistent positions during the course of these proceedings. In resisting Okland's motion for summary judgment, he argued there was sufficient evidence of gross negligence. After he settled with Okland and Okland was dismissed, Smith argued there was insufficient evidence of Okland's gross negligence. Presumably, Smith did not want the issue of Okland's fault to be submitted to the jury because it could reduce the amount of fault allocated to Air Feeds and reduce the damages he would ultimately recover

from that defendant. Typically, judicial estoppel arises in cases in which a party asserts a position in a prior judicial proceeding and then asserts an inconsistent position in a separate and subsequent judicial proceeding. *See, e.g., Roach v. Crouch,* 524 N.W.2d 400, 403 (Iowa 1994) (inconsistent positions allegedly asserted in federal and state court proceedings). Given our finding that there was sufficient evidence of Okland's gross negligence, we need not address whether the doctrine of judicial estoppel would apply to a litigant who asserts inconsistent positions within the context of one case as opposed to separate judicial proceedings.

lins. Air Feeds specifically cautioned Okland not to use the design unless it implemented fool-proof point guarding to ensure the operator's safety.

Martin Mabee, an employee of Putco, testified he operated the press when it was first acquired and learned switching the feeder control to FCP would cause the press to cycle. This occurred when his hand was located in the area between the die and the feeder. He testified he advised Okland about this incident. Mitchell Gronemeyer, an electrician employed by Putco to modify the feeder and press circuitry, testified he knew the modifications would allow the control panel of the feeder to cause the press to cycle. He testified he warned Okland the feeder control panel should be kept a sufficient distance away from the press to prevent activation of the press while the operator was working in the point of operation.

Given this record, there was sufficient evidence Okland knew of the peril, knew an injury was probable, and consciously failed to take action to avoid the peril. The trial court was correct to submit the issue of Okland's gross negligence to the jury.

*III. Agency.* The jury was instructed on the elements of an express agency relationship and that a principal may be liable for the acts of its agents (instructions ten and eleven). Smith proposed jury instructions on agency which included express, implied, and apparent authority as well as ratification. He argues the trial court erred in submitting only the instruction on express authority.

■ Substantial evidence must be presented at trial to support the submission of a proposed jury instruction. *Sumpter,* 519 N.W.2d at 432. Evidence is substantial when reasonable minds would accept it as adequate to reach the conclusion. *Id.*

■ There was not substantial evidence to support the submission of theories of implied or apparent authority or ratification. At most, the evidence revealed Air Feeds frequently used the services of D.J. Engineering and would refer to Mullins as its engineer or electrician. Mullins and D.J. Engineering regarded themselves as working for Air Feeds in conjunction with the modification of the Putco feeder. These circumstances give rise to the possibility of an express agency relationship, but not implied or apparent authority nor ratification. The court properly limited its agency instructions to that of express authority.

■ *IV. Insurance Coverage.* At trial, Air Feeds inquired as to the availability of health insurance Smith might have to cover the cost of a prosthesis. Smith argues that after Air Feeds raised the topic of health insurance, he should have been allowed to address the issue of workers' compensation coverage. Smith argues the effect of the court's rulings was prejudicial and he should have been granted a new trial.

Pursuant to the trial court's earlier ruling on a motion in limine, all references to Smith's workers' compensation coverage were excluded. This ruling was consistent with existing case law. *See Schonberger v. Roberts,* 456 N.W.2d 201 (Iowa 1990). Air Feeds only inquired as to the availability of health insurance to cover the cost of a prosthesis. Smith never objected to this line of questioning and, in fact, followed up on it with questions of his own.

Smith was not denied the opportunity to respond to the health insurance questions and could have inquired about the costs of procurement of the coverage or related indemnification or subrogation rights. Iowa Code § 668.14(2). There was no error in allowing questions pertaining to Smith's health insurance and excluding evidence regarding his workers' compensation benefits. Smith was not entitled to a new trial on this basis.

■ *V. Adequacy of Damages.* Smith asserts he should have been granted a new trial due to the inadequacy of the damages awarded by the jury. Our review of the trial court's refusal to grant a new trial is for an abuse of discretion. *Ort v. Klinger,* 496 N.W.2d 265, 269 (Iowa App.1992). In resisting Smith's motion for a new trial, Air Feeds conceded the jury's verdict should be modified to include $102,354.11 in past medical expenses. The trial court amended the judgment to include the expenses and no other basis exists for finding the jury's award of

damages was inadequate. Unable to find an abuse of discretion, we affirm the trial court's denial of a new trial.

 *VI. Breach of Contract.* Smith contends the trial court erred in refusing to give his requested instructions on breach of contract. Smith had requested seven instructions pertaining to a cause of action based on contract. His brief erroneously asserts the jury received only one instruction on breach of contract. A review of the court file reveals the jury was instructed how to determine if a contract existed and its terms (instructions seventeen and eighteen), the elements of an action for breach of contract (instruction sixteen), and about the issues of capacity, consideration, and breach (instruction nineteen). The jury was also instructed a contract may be oral or written (instruction nineteen).

 A trial court does not err in refusing to submit a party's proposed instruction when its concepts are embodied in other instructions submitted to the jury. *See Kirk v. Union Pacific R.R.*, 514 N.W.2d 734, 738 (Iowa App.1994). The essence of nearly all of Smith's requested instructions were incorporated in the four instructions given by the court.

 Smith argues the trial court should have instructed the jury that ambiguities in a contract are construed against the drafter. Smith alleged he was a third-party beneficiary of a contract between Air Feeds and Putco in which Air Feeds would provide assistance, installation, and/or training in setting up and operating the feeder. Smith relies on language contained in the price quote[3] and invoice[4] in arguing the existence of a contract. Assuming, without deciding, Smith preserved error on this issue, we find the language was not ambiguous and the trial court did not err in refusing to give Smith's requested instruction.

 *VII. Evidence of Remedial Measures.* Smith argues the court erred in allowing evidence pertaining to remedial measures which Air Feeds took after his

accident. Specifically, he objected to the admission of evidence about guards which were installed on the press after his injury. Smith concedes Iowa Rule of Evidence 407 does not apply to evidence of remedial measures when offered in connection with strict liability claims. However, he argues the evidence about the guards was offered by Air Feeds against Okland, against whom there were no strict liability claims.

Iowa Rule of Evidence 407 provides:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered in connection with a claim based on strict liability in tort or breach of warranty or for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

 This rule incorporates the well-established principle that proof of a defendant's post-accident repair or improvement is ordinarily not admissible in negligence actions. Iowa R.Evid. 407 comm. cmt. (1983). However, evidence of subsequent measures is not excluded when offered in connection with a claim based on strict liability.

 A trial court is granted a broad range of discretion in determining the admissibility of evidence. *Bingham v. Marshall & Huschart Mach. Co.*, 485 N.W.2d 78, 81 (Iowa 1992). We review for an abuse of discretion. *Id.* This is not the typical scenario in which a plaintiff wishes to introduce evidence of remedial measures and a defendant resists. Here a defendant wished to introduce the evidence to establish the gross negligence of another party.

Air Feeds was defending a strict liability claim and was arguing a third party, Okland,

---

3. "Installation and Training"

4. "Installation Assistance—One Man, One Day"

was grossly negligent in not installing the guards. Evidence of the guards was also relevant to Air Feeds' contention that installation of such guards was feasible. *See Bandstra v. International Harvester Co.*, 367 N.W.2d 282, 288 (Iowa App.1985). Under these circumstances, admission of evidence of the remedial measures was not an abuse of discretion.

**AFFIRMED.**